Robert G. McCRAY,
Plaintiff-Appellant,

v.

L. B. SULLIVAN, as Commissioner of
the Alabama State Board of Correc-
tions, et al., Defendants-Appellees.

Jerry WHITE and Alvin Claybrone,
Plaintiffs-Appellants,

v.

COMMISSIONER OF ALABAMA
BOARD OF CORRECTIONS et
al., Defendants-Appellees.

Nos. 73-2744; 73-3404.

United States Court of Appeals,
Fifth Circuit.

March 19, 1975.

William R. Lauten, Mobile, Ala. (Court appointed) for plaintiffs-appellants.

William J. Baxley, Atty. Gen., Don Dickert, Asst. Atty. Gen., Montgomery, Ala., Herbert H. Henry, Asst. Atty. Gen., Birmingham, Ala., for defendants-appellees.

**1334**

Before GODBOLD and MORGAN, Circuit Judges, and BOOTLE, District Judge.

GODBOLD, Circuit Judge:

These are consolidated appeals from decisions in favor of defendants [1] in several § 1983 [2] actions by prisoners incarcerated in the Alabama state penal system. Each appeal presents a variety of issues concerning conditions in Alabama prisons which plaintiffs-appellants contend are violative of either prior injunctions issued by the District Court in *Beard v. Lee*, Civil No. 4345–66 (S.D. Ala., filed Jan. 24, 1969),[3] and *Lake v. Lee*, 329 F.Supp. 196 (S.D.Ala., 1971), or the Eighth Amendment to the United States Constitution. The two appeals present distinct issues and will be discussed separately.

### McCray v. Sullivan

Appellant McCray is a prisoner in the Holman Unit of the Alabama State Penitentiary. During the period of his incarceration in Holman he has been in administrative segregation with brief periods of confinement in punitive isolation. Seeking injunctive relief, he raises a number of issues relating to the conditions of his confinement.[4]

 (1). Segregation of homosexuals. The District Court determined that this issue had been raised in *Beard* and *Lake* and therefore would not be considered. The federal courts are extremely reluctant to limit the freedom of prison officials to classify prisoners as they in their broad discretion determine appropriate. *Young v. Wainwright,* 449

F.2d 338 (CA5, 1971). However, where prison officials have failed to control or separate prisoners, whether homosexual or not, who endanger the physical safety of other prisoners, prison officials may be required to take steps to protect the prison population from those dangerous prisoners. See *Gates v. Collier,* 501 F.2d 1291, 1308–10 (CA5, 1974); *Holt v. Sarver,* 309 F.Supp. 362 (E.D.Ark., 1970), aff'd 442 F.2d 304 (CA8, 1971). McCray's complaint alleges such extreme circumstances. He claims that homosexuals frequently are the cause of violent assaults causing injury and death and that prison authorities condone many such occurrences. Although *Lake* did address this issue, McCray appears to allege further occurrences of violence which require consideration by the District Court. The District Court's dismissal of this issue must be reversed, and this portion of the cause remanded for further proceedings. The District Court on remand should determine whether prison practices in this regard do in fact violate the constitution and what corrective measures, if any, must be required of the defendants.

 (2). Conjugal visits by spouses. The District Court dismissed this contention on the ground it had been resolved in *Beard* and *Lake*. Although we are unable to see that it was addressed in either *Beard* or *Lake*, the dismissal was proper. Failure to permit conjugal visits does not deny an inmate a federal constitutional right. *Tarlton v. Clark,* 441 F.2d 384 (CA5), cert. denied 403 U.S. 934, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971). Visitation privileges are a matter subject to the discretion of prison officials. See *Walker v. Pate,* 356 F.2d 502 (CA7), cert. denied 384 U.S. 966, 86 S.Ct. 1598, 16 L.Ed.2d 678 (1966); *Payne v. District of*

---

1. Defendants in *McCray* are the Commissioner of the Alabama State Board of Corrections, the Warden of the Holman Unit of the Alabama State Penitentiary, and the Alabama State Board of Corrections. Defendants in *White* include the Commissioner, the Warden of the Atmore Unit of the Alabama State Penitentiary, and various officers and administrative personnel at Atmore.

2. 42 U.S.C. § 1983.

3. The injunction in *Beard* is set forth in *Lake.* 329 F.Supp. at 198.

4. No class allegations are involved.

Columbia, 102 U.S.App.D.C. 345, 253 F.2d 867 (1958); Queen v. South Carolina Dept. of Corrections, 307 F.Supp. 841 (D.S.C., 1970).

■ (3). Failure to provide a reasonable rehabilitation program. This was dismissed on the same ground as (2), and we reach the same conclusion as we did for (2). In the context of extreme conditions the failure to provide a rehabilitation program has been held to violate the Eighth Amendment. See Holt v. Sarver, *supra*; Finney v. Arkansas Board of Corrections, 505 F.2d 194 (CA8, 1974). We decline to find that the failure of the Alabama prison system to provide a rehabilitation program, by itself, constitutes cruel and unusual punishment. See Smith v. Schneckloth, 414 F.2d 680 (CA9, 1960). See also Diehl v. Wainwright, 419 F.2d 1309 (CA5, 1970); United States v. Pate, 229 F.Supp. 818 (N.D.Ill., 1964).

■ (4). Bathing and exercise. The appellant, conceding that these items had been covered in the injunction in *Lake*, argues that the *Lake* injunction was insufficient to insure compliance with the Eighth Amendment. We agree with the District Court that these matters were settled in *Lake*. Appellant fails to allege the existence of new circumstances which would justify reconsideration of these issues, and therefore these portions of the complaint were properly dismissed.

■ (5). Violations of the *Beard* and *Lake* injunctions. The *Beard* and *Lake* injunctions are allegedly being violated in three respects. First *Lake* requires that "inmates are to have daily access to materials for brushing or cleaning their teeth." The District Court found that the prison policy, at the time of trial, was to issue toothbrushes free of charge and to provide inmates with 50 cents every two weeks from which toothpaste, as well as other personal needs, could be purchased.[5] We find no error in the District Court's determination that the defendants were in compliance.

■ Second, *Beard* requires that "medical attention will be available whenever needed and the doctor will visit the unit at least once every three days." Appellant contends that this requires the doctor to personally visit the punitive isolation cells three times per week. The prison's policy was to send a medical assistant to visit punitive isolation who would determine which inmates sought medical attention. Those inmates would then be able to see the doctor who visited the prison infirmary three times per week.[6] We find no error in the District Court's determination that this procedure complies with the injunction in *Beard*.

■ Third, the *Lake* injunction requires:

(3) Mail to and from any attorney at law, licensed to practice in the State of Alabama, will not be opened except where there is reasonable cause to believe sealed communications are enclosed.

(4) Mail to and from public officials is not to be opened.

The District Court found that mail to and from attorneys had been opened and read by prison authorities. The court found, however, that no injury had resulted to appellant and further found that the defendants had adopted and implemented "a strict policy of having all official incoming mail[7] delivered to and receipted by the inmates[8] and is ensur-

5. The earlier policy had been that inmates were to purchase both toothbrushes and toothpaste from this money.

6. It is unclear the degree of discretion vested in the medical assistant to determine who would have the opportunity to see the doctor. The District Court determined that this system was providing adequate opportunity for treatment by a physician. This finding is not clearly erroneous. The prison now has a full time physician, and it appears that the prison is well within the requirements of the injunction in *Beard*.

7. The evidence indicates that the District Court was referring to mail from attorneys as well as mail from public officials.

8. The evidence further indicates that mail is not opened or read by the prison authorities under this receipt system.

ing that all outgoing mail, whether of an official nature or not, is sealed by the prisoner who desires it sealed." These findings support the District Court's denial of further injunctive relief. Although we agree with the District Court's conclusion that defendants were not violating the mail requirements of *Lake*, the District Court did not have the benefit of two recent Supreme Court decisions, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), delineating the constitutional minimums for procedures employed in the processing of prisoner mail. A remand for consideration of these regulations in light of these decisions is necessary. Mills v. Sullivan, 501 F.2d 939 (CA5, 1974).

### White v. Commissioner

Appellants Claybrone and White are presently incarcerated in the Atmore prison farm unit of the Alabama State Penitentiary. In a series of five complaints [9] they seek damages and injunctive relief for violations of the injunctions in *Beard* and *Lake* and for violations of various of their federal constitutional rights. The District Court found that the defendants were in compliance with the *Beard* and *Lake* injunctions and that no constitutional rights of appellants were being violated.

 We agree with appellants that conditions in punitive isolation in Atmore violate the Eighth Amendment. A brief summary of the evidence demonstrates' the inhuman conditions to which inmates in punitive isolation are subjected. Punitive isolation prisoners are segregated from the general prison population. As many as seven of them are placed in a cell which measures six feet by eight feet. These cells are essentially concrete boxes with no bunks, toilets, sinks or other facilities. A hole in the cell floor serves as a toilet. This is flushed four times per day by a guard who has access to the flushing mechanism. Flushing frequently causes the waste to back up onto the floor of the cell.[10] Inmates placed in punitive isolation live in these conditions day and night for as long as 21 days.

 Punitive isolation per se is not unconstitutional. Novak v. Beto, 453 F.2d 661 (CA5, 1971), cert. denied 409 U.S. 968, 93 S.Ct. 279, 34 L.Ed.2d 233 (1972). We noted in *Novak* that the common element in cases finding a violation of the Eighth Amendment is the deprivation of the basic elements of hygiene. See Gates v. Collier, 501 F.2d 1291, 1300–04 (CA5, 1974). This case shares that common element. Seven persons of normal size cannot even lie down on a six by eight floor. The punitive isolation conditions which we have described rise to the level of constitutional violations. We reverse the findings of the District Court with respect to punitive isolation and remand for entry of an appropriate injunctive order.[11]

 The appellants raise other contentions concerning conditions in punitive isolation relating to ventilation, bathing, exercise, and clothing. There is conflicting testimony on these issues.

9. One complaint was filed by White and Claybrone jointly. The remaining complaints were filed by Claybrone alone.

10. There is testimony that this is caused by prisoners clogging the toilet with toilet paper. Assuming this is true, a method must be found by which as many as seven men, some of whom presumably did not clog up the toilet, will not have to live and sleep on a floor that has waste on it.

11. Despite the conditions we have described the defendants were in compliance with the literal language of the *Beard* injunction which permitted as many as eight persons in a punitive isolation cell and required that toilets be flushed a minimum of three times per day. It is inconceivable to us, however, that in *Beard* the District Court intended the limits it prescribed to be permissible in other than exceptional circumstances and then only for brief periods of time, and not when toilets are failing to operate properly in an overcrowded cell. Our decision that the conditions we have described violate the Eighth Amendment and must be enjoined is not intended to have retroactive effect.

The District Court's determination that the injunction in *Beard* was being obeyed in these respects is not clearly erroneous.

Appellant McCray also attacks the policy of the prison regarding the opportunity of prisoners in punitive isolation to obtain access to the courts. The District Court found that "[i]nmates in isolation are not permitted to receive mail or to write writs, but confinement cannot last over twenty-one (21) days." The District Court found these restrictions were reasonable. "An inmate's right of unfettered access to the courts is as fundamental a right as any other he may hold. . . . All other rights of an inmate are illusory without it . . .." Adams v. Carlson, 488 F.2d 619, 630 (CA7, 1973). This court has frequently recognized the special protection due the right to access to the courts. See Eisenhardt v. Britton, 478 F.2d 855 (CA5, 1973); Barlow v. Amiss, 477 F.2d 896 (CA5, 1973); Frye v. Henderson, 474 F.2d 1263 (CA5, 1973); Schack v. Wainwright, 391 F.2d 608 (CA5), cert. denied 392 U.S. 915, 88 S.Ct. 2078, 20 L.Ed.2d 1375 (1968). The restrictions in the present case may amount to an unconstitutional infringement on this right. Prison authorities have the authority to impose regulations on the time, place and manner in which punitive isolation inmates communicate with attorneys and courts. These regulations, however, must be based on compelling needs of prison administration and discipline. The purpose of the regulation must not be interference with an inmate's communication with the courts and attorneys. We are unable to find any evidence in the present record directed toward these considerations. Before the constitutionality of these restrictions is determined, the parties should have the opportunity to present further evidence concerning the justifications, or lack thereof, for these restrictions on the right to access to the courts. This portion of the decision of the District Court must be re-versed and remanded for reconsideration of this issue.

The District Court's finding of no discrimination against Black Muslim inmates in favor of Christian inmates must be affirmed. The evidence indicates that prison authorities have made major efforts to meet the needs and requests of Black Muslims. Black Muslim inmates have clearly been provided "a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263, 268 (1972).

Appellants contend that prison mail is censored in violation of the *Lake* injunction. There is conflicting testimony on this issue, and the District Court's finding in favor of defendants must be affirmed. It is appropriate, however, for the mail regulations at Atmore to be reconsidered in the light of recent Supreme Court decisions. See discussion *supra*. This portion of the cause must therefore be remanded.

Appellants have made numerous other claims, the denial of which must be affirmed because the evidence with respect to each was in conflict or the District Court could properly find that the evidence offered by the plaintiffs was not credible. These are: that in proceedings by which prisoners are assigned to punitive isolation they are not given sufficient notice and opportunity to present witnesses and cross-examine witnesses; that inmates in punitive isolation are provided with insufficient medical care; that appellant Claybrone was forced to work when sick; that the prison administrators discriminate against black inmates; that prison guards have at various times capriciously mistreated Claybrone and other inmates; and that certain defendants conspired to murder appellant Claybrone.

Affirmed in part, reversed and remanded in part.