**Walter LEONARD, Jr., et al., Plaintiffs-Appellees,**

v.

**MISSISSIPPI STATE PROBATION AND PAROLE BOARD et al., Defendants-Appellants.**

No. 74–2354.

United States Court of Appeals, Fifth Circuit.

March 17, 1975.

Rehearing and Rehearing En Banc Denied June 10, 1975.

A. F. Summer, Atty. Gen., Edwin A. Snyder, Asst. Atty. Gen., Jackson, Miss., for defendants-appellants.

David M. Lipman, Jackson, Miss., for plaintiffs-appellees.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

WISDOM, Circuit Judge:

In this § 1983 case, brought as a class action by Walter Leonard, Jr., an inmate of the Mississippi State Penitentiary, the district court enjoined the Mississippi State Probation and Parole Board, the Mississippi State Penitentiary Board, and the Superintendent of the Mississippi State Penitentiary from relying on prison disciplinary records that were the product of procedures held to be constitutionally infirm in Gates v. Collier, 5

Cir. 1974, 501 F.2d 1291. The defendants had utilized these pre-*Gates* records for determining prisoner classifications, eligibility for work-release, vocational and educational programs, camp and work assignments, and parole consideration. On appeal, the defendant-appellants set out three grounds for reversal. First, they contend that a three-judge district court should have been convened to hear this case under 28 U.S.C. § 2281.[1] Second, they say that this class action is not properly cognizable as a Section 1983[2] action because, under Preiser v. Rodriguez, 1973, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, "habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement." Third, and decisively, they point out that this Court's decision in *Gates* should not be applied retroactively to require expungement of records made before the adoption,[3] on January 26, 1973, of disciplinary procedures that conform to constitutional requirements.

We find the appellants' first two arguments without merit. We reverse the decision of the district court only because we hold that this Court's decision in *Gates* must not be applied retroactively.

I

Under 28 U.S.C. § 2281, a three-judge district court must be convened

---

1. 28 U.S.C. § 2281 provides that:

 An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

2. 42 U.S.C. § 1983 provides that:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. *Gates* involved an omnibus bill for relief by prisoners at Parchman. With respect to the disciplinary rules element, Chief Judge Keady entered judgment for the plaintiffs on October 20, 1972, and ordered prison officials to frame disciplinary rules that would conform to constitutional standards. See Gates v. Collier, N.D.Miss.1972, 349 F.Supp. 881. The prison officials adopted new regulations that went into effect on January 26, 1973. The Fifth Circuit affirmed Judge Keady's opinion with respect to disciplinary rules on September 20, 1974. See Gates v. Collier, 5 Cir. 1974, 501 F.2d 1291.

whenever a plaintiff seeks a federal injunction to restrain the enforcement, operation or execution of a state statute "by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes". In some circumstances, Section 2281 also requires that a three-judge court be convened when an injunction is sought to restrain a state administrative "practice". Sands v. Wainwright, 5 Cir. 1973 (en banc), 491 F.2d 417. The cardinal rule of construction in Section 2281 cases, however, is that the three-judge court statute is a technical enactment in the strict sense and must be narrowly construed. See Phillips v. United States, 1941, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800, 805; Sands v. Wainwright, 5 Cir. 1973 (en banc), 491 F.2d 417. See also 1 W. Barron & A. Holtzoff, Federal Practice and Procedure § 52 (C. Wright ed. 1960); D. Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1 (1964); 7 Moore's Federal Practice ¶ 65.16 (1974); C. Wright, Handbook of The Law of Federal Courts § 50, p. 188 (1970 ed.). As Justice Frankfurter said in *Phillips,* "To bring this procedural device into play— to dislocate the normal operations of the system of lower federal courts . . . requires a suit which seeks to interpose the Constitution against the enforcement of *a state policy,* whether such policy is defined in a state constitution or in an ordinary statute or through the *delegated legislation* of an 'administrative board or commission'. The crux of the business is procedural protection against an improvident statewide doom by a federal court of a state's legislative policy." Phillips v. United States, 1941, 312 U.S. 246, 251, 61 S.Ct. 480, 483 (emphasis supplied).

In this case, Leonard does not challenge any provision of the Mississippi Constitution. Nor does he attack the constitutionality of any statute, either on its face or as applied. Finally, he does not attack any formal order, rule, or regulation that has been promulgated by a state board or commission. The question, then, is whether the facts of this case fall within the area elucidated in *Sands,* so that a three-judge court must be convened to consider enjoining the continuation of a state administrative "practice".

■■ In *Sands,* the defendant Texas prison officials maintained that a three-judge court was not required because the plaintiffs were challenging only prison "practices" and not prison regulations.[4] The Court said that a distinction between "practices" and "regulations" could not be sustained because "*in this case, [Sands],* it is a distinction without a difference". 491 F.2d 417, 428 (emphasis added). Moreover, the Court held that:

> "The 'practices' whose enforcement the inmates seek to enjoin are, in reality, the Rules and Regulations of the Texas Department of Corrections, *as applied.* Plaintiffs claim that no particular paragraph or section of those Rules and Regulations—either the 1953 version in effect at the time this litigation was initiated, or the July 9, 1973, version currently in effect—is constitutionally offensive, and that no injunction is sought against any such paragraph or section. The entire thrust of plaintiff's argument, however, is that the Rules and Regulations, *as a whole* and *as applied,* are constitutionally deficient standing alone. More complete and more specific regulations must be mandated in order to assure that the present 'practices' will not be continued."

**4.** A number of cases were consolidated in *Sands* for consideration by the en banc court. Although the particular issue discussed here was raised by the Baker v. Estelle section of the en banc case, we will refer to the case, hereafter in this opinion, as *Sands.*

The Court also held in *Sands* that an administrative rule promulgated by a single state

official, rather than by an administrative board or commission, was sufficient to trigger Section 2281. See Sands v. Wainwright, 5 Cir. 1973 (en banc), 491 F.2d 417, 426–427. That branch of the *Sands* holding is not relevant here since the constitutional challenge runs to no administrative order whatsoever.

491 F.2d 417, 428 (emphasis in original). Clearly, *Sands* does not require that a three-judge court be convened whenever a state administrative "practice" is challenged as unconstitutional. A three-judge court is not required when the constitutional attack is aimed at the mere results of "erroneous administrative action". Ex Parte Bransford, 1940, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249. See also Clark v. Thompson, S.D. Miss.1962, 204 F.Supp. 30, 31. The mere fact that a prisoner is injured by the acts of a state official done "under color of state law" is sufficient to state a claim under Section 1983, but it is not sufficient to trigger application of Section 2281. In *Sands,* however, the administrative "practice" was, in effect, the application of administrative rules or regulations that the court found insufficiently specific; in short, the constitutional challenge ran to administrative rules "as applied".

■ Here, no such nexus exists between any administrative rules and the administrative practice sought to be enjoined; the administrative practice is simply amorphous. Leonard challenges the continued use of pre-*Gates* disciplinary records by state officials. The record shows that the defendant officials have continued, in fact, to rely on these records. The record also shows that neither constitutional provision nor statute nor administrative rule requires them to do so. Moreover, no facts in the record demonstrate that the administrative practice challenged here is in fact an administrative rule "as applied" in the sense that term was used in *Sands.* We hold, therefore, that the administrative practice Leonard challenges is a mere practice and does not require the convening of a three-judge court.

## II

The appellants' second argument, based on Preiser v. Rodriguez, 1973, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, is that this class action should have been brought by application for a writ of habeas corpus rather than by an action based on Section 1983 because Leonard, the named plaintiff, was in fact challenging the fact or duration of his confinement. In *Preiser,* the court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.,* 1973, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439, 456. This distinction is important to the individual party or parties involved because of the different exhaustion principles applied in habeas corpus and Section 1983 cases. See 28 U.S.C. § 2254 and Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; Damico v. California, 1967, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647. But see also Gibson v. Berryhill, 1973, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 and Comment, Exhaustion of State Administrative Remedies In Section 1983 Cases, 41 U.Chi.L.Rev. 537 (1974). In *Preiser,* the plaintiffs "sought injunctive relief to compel restoration of [good-time-conduct] credits, which in each case would result in their immediate release from confinement in prison." 411 U.S. at 476–477, 93 S.Ct. at 1829. The Court held, therefore, that the essence of this action fell within the "core" of habeas corpus.

The appellants contend that it has been apparent from the beginning of this litigation that Leonard in fact seeks an early release from custody and that he has disguised a true habeas corpus action as a Section 1983 action in order to circumvent the exhaustion requirement. This argument places substantial weight on Leonard's statement, made at the evidentiary hearing, that he "wants out on parole". We think that this view ignores the very theory and purpose of this class action.

As the named plaintiff in this action, Leonard brought suit on his own behalf and on behalf of a class of plaintiffs who

have allegedly suffered harm from the continued use of pre-*Gates* records. The class seeks a declaratory judgment and an injunction to prevent the defendants' use of pre-*Gates* records for any purpose against the interest of any class member. In Leonard's own case, the effect of an injunction would be to prevent the defendant officials from considering Leonard's pre-*Gates* disciplinary offenses in determining parole eligibility. In other cases, the injunction's effect would be to prevent the defendant officials from considering other prisoners' pre-*Gates* records in determining prisoner classifications and eligibility for parole consideration, work-release, and educational programs. Of course, the specific and concrete effect of such an injunction on the status of each prisoner is highly speculative.

The Supreme Court, in *Preiser,* stated that the plaintiffs would have had to bring a habeas corpus action "even if restoration of [their] good-time credits had merely shortened the length of their confinement, rather than required immediate discharge". 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439, 449. Arguably, the principle stated in *Preiser* may affect the relief to which Leonard would, individually, be entitled in this case. Because of our disposition on the merits, however, we need not reach that point.

■ The only class relief sought is a determination that the continued use of pre-*Gates* records is unconstitutional and an injunction to prevent their use and require their expungement. At least insofar as Leonard brings this action on behalf of the class, we hold that it is properly brought as a Section 1983 action.[5]

## III

Finally, we must determine whether this Court's decision in *Gates* should be applied retroactively so as to require expungement of pre-*Gates* records. Our approach to the retroactivity issue is circumscribed by the Supreme Court's previous consideration of this issue in Wolff v. McDonnell, 1974, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935. In *McDonnell,* the Supreme Court reversed the Eighth Circuit's holding that due process requirements in prison disciplinary proceedings must be applied retroactively so as to require that prison records containing determinations of misconduct, not in accord with required procedures, be expunged. The Supreme Court said:

> The question of retroactivity of new procedural rules affecting inquiries into infractions of prison discipline is effectively foreclosed by this Court's ruling in Morrissey that the due process requirements there announced were to be "applicable to *future* revocations of parole" . . . Despite the fact that procedures are related to the integrity of the fact-finding process . . . great weight should be given to the significant impact a retroactivity ruling would have on the administration of all prisons in the country, and the reliance prison officials placed, in good faith, on prior law not requiring such procedures . . . If Morrissey-Scarpelli rules are not retroactive out of consideration for burden on federal and state officials, this case is a fortiori.

*Id.,* 418 U.S. 539, 573, 94 S.Ct. 2963, 2983, 41 L.Ed.2d 935, 961.

As a matter of policy, the Supreme Court based its decision against retroactivity on the adverse effects an alterna-

---

5. Under *Preiser,* as we have noted, Leonard *may* not be entitled to relief in a § 1983 action because of the particular effect that would result in his case from remedying the general harm that is shared by all members of the class. This factor should have no more effect upon the class action dimension of Leonard's complaint than is usually the case when the named plaintiff is finally offered a job or some analogous benefit from which his class is generally excluded. See Smith v. YMCA, 5 Cir. 1972, 462 F.2d 634; Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28. We have no standing problem in this case. See Long v. District of Columbia, 1972, 152 U.S.App.D.C. 187, 469 F.2d 927; Hadnott v. Laird, 1972, 149 U.S.App.D.C. 358, 463 F.2d 304.

tive rule might have on the administration of prisons and on past good faith reliance of prison officials on then applicable law that did not require such procedures. Nonetheless, the Court's language clearly indicates that it intended in *McDonnell* to state a nonretroactivity rule of categorical application; it did not intend to invite a case-by-case determination of past good faith.[6]

 In light of the Supreme Court's holding in *McDonnell*, we hold that the district court erred in applying *Gates* retroactively so as to require expungement of pre-*Gates* records.

The judgment of the district court is therefore reversed.

---

**6.** Counsel for the plaintiffs makes the novel argument that the nonretroactivity rule stated in *McDonnell* should, itself, be applied nonretroactively. We think that this argument is without merit. It was implicitly rejected in Mills v. Sullivan, 5 Cir. 1974, 501 F.2d 939 and in Taylor v. Sterrett, 5 Cir. 1974, 499 F.2d 367.